AMERICA ONLINE, INC., Appellant,

v.

Christy L. WILLIAMS et al., Individually and on Behalf of all other Texas Residents Similarly Situated, Appellees.

No. 14–97–00451–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 20, 1997.

Rehearing Overruled Jan. 22, 1998.

James E. Tancula, Susan K. Pavlica, Charles Kelley, Jon T. Powell, Houston, for Appellant.

William P. Maines, James H. Pearson, Houston, for appellees.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

AMIDEI, Justice.

This is an interlocutory appeal from an order certifying a class in a DTPA action against appellant, America Online, Inc. (AOL), an online computer services provider. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(3) (Vernon 1997). AOL presents an issue of first impression, contending the trial court abused its discretion by certifying a class during the mandatory abatement period provided by the DTPA when a plaintiff fails to give pre-suit notice to the defendant. We reverse and remand.

On December 1, 1996, AOL began offering a flat-fee plan instead of a per-minute rate for its online services. The resulting increased usage exceeded its expectations and resulted in subscribers having difficulty obtaining access to AOL's network. AOL attempted to resolve customer complaints and on February 4, 1997 executed a negotiated agreement with the attorneys general of 45 states, including Texas, which provided for subscribers to receive refunds or credits (the Assurance of Voluntary Compliance, or AVC). There is also a nationwide class suit against AOL that was filed in Illinois on December 18, 1996 in which a preliminary settlement has been reached.[1]

Christy L. Williams and William M. Buss, the named plaintiffs in this action, filed suit on January 24, 1997, alleging AOL violated

---

**1.** *See Schwab v. America Online, Inc.,* No. 96 CH 13732, Circuit Court of Cook County, Illinois, County Department, Chancery Division. Texas subscribers who file a complaint are covered by the AVC and may also participate in the *Schwab* settlement, unless they opt out.

the DTPA. *See* TEX. BUS. & COM.CODE ANN. §§ 17.041–.063 (Vernon 1987 & Supp.1997). Specifically, appellees sought damages under section 17.50(b)(1). TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1997). AOL filed an answer on February 17, 1997. On February 26, 1997, appellees filed a motion to certify the class. AOL then filed a verified plea in abatement on March 12, 1997. It also filed a motion to dismiss the action pursuant to a forum selection clause in the subscriber agreements. Appellees filed a response to AOL's plea in abatement on March 18, 1997, contending that pre-suit notice was unnecessary because appellant entered a potential settlement agreement with the Texas Attorney General's office. Attached was an affidavit from appellees' attorney, James Pearson, setting forth the facts pertaining to the suit filing, service, and the execution of the AVC.[2] On April 2 and April 3, 1997, appellees filed their First and Second Amended Petitions, adding two additional plaintiffs and additional causes of action. On April 3, 1997, the trial court conducted a certification hearing, during which AOL objected to the court's consideration of certification during the automatic abatement period. The court announced its decision to order certification and heard AOL's objections. The trial court executed its order certifying a class of "[a]ll AOL subscribers throughout Texas who were subscribers to AOL on December 1, 1996 or who became subscribers on that date or thereafter until and including April 1, 1997." After the court certified the class, it then abated the action for the applicable period after "proper DTPA notice."

 Initially, appellees argue that only part of this action is appealable. Appellees recognize that an order granting or denying

class certification is appealable. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(3) (Vernon 1997). Appellees argue that AOL is also attempting to obtain review of an order granting or denying a plea in abatement. An order on a plea in abatement is not an appealable order. *See Harper v. Welchem, Inc.* 799 S.W.2d 492, 495 (Tex.App.—Houston [14th Dist.] 1990, no writ) ("An order that merely sustains a plea in abatement is interlocutory and not appealable."). When a plaintiff fails to give a statutory notice that is a prerequisite to filing suit and a defendant's timely request for an abatement is denied, that defendant is entitled to seek review of the court's denial by mandamus. *Hines v. Hash,* 843 S.W.2d 464, 469 (Tex.1992) (construing DTPA notice provision). Alternatively, a defendant may wait to appeal from the final judgment when seeking review of a denial of abatement, but the trial court's error must be shown to have been harmful to obtain reversal. *Id.*

 Texas courts strictly construe statutes authorizing interlocutory appeals. *See Tober v. Turner of Tex., Inc.,* 668 S.W.2d 831, 835 (Tex.App.—Austin 1984, no writ). In class certification appeals, however, the appellate court has jurisdiction over matters related to certification that are also included in the order. *American Express Travel Related Servs. Co. v. Walton,* 883 S.W.2d 703, 707 (Tex.App.—Dallas 1994, orig. proceeding) (since the trial court had disposed of issues of class size and notification in its order certifying the class, the appellate court had jurisdiction to review those collateral issues). Section 51.014 allows a party to complain of all matters pertaining to certification of the class decided by the interlocutory order certifying or refusing to certify a class. *Id.*

---

**2.** Pearson's affidavit states in relevant part:

2. This case was filed by, inter alia, our law firm, on January 24, 1997, with the Harris County District Clerk's office.

3. Citation was served on America Online on January 29, 1997 at or about 9:45 A.M.

4. Subsequently, America Online entered into an Agreement with the Texas Attorney General's Office, on or after February 4, 1997.... A copy of that Agreement is attached hereto and was taken from the Motion to dismiss filed by AOL.

5. We have discussed this settlement offer with several of our clients and they are considering it.

6. According to par. 36 of the Agreement, and a Notice we received from the Texas Attorney General's office (copy attached hereto), a decision to accept of [sic] reject the terms of the Agreement must be made before June 1997, or the rights under the Agreement will be lost.

In this case, a proper review of the trial court's certification order requires us to consider the court's failure to abate the action until after it certified the class. AOL does not complain that the trial court later abated the action and its appeal is not from the abatement order. Therefore, we conclude we have jurisdiction to review the trial court's action.

■■■ In AOL's first point of error, it alleges the trial court abused its discretion in certifying a class during the automatic and mandatory DTPA abatement period, thereby depriving it of the opportunity to resolve the claims asserted by the named plaintiffs. *See* TEX. BUS. & COM.CODE ANN. § 17.505(d) (Vernon Supp.1997). AOL argues that the trial court had no authority to proceed during the abatement period. "An abatement is a present suspension of all proceedings in a suit." *Permanente Med. Ass'n of Tex. v. Johnson,* 917 S.W.2d 515, 517 (Tex.App.—Waco 1996, orig. proceeding) (granting writ of mandamus when trial court only partially abated proceedings). "Suspend" means "to interrupt; to cause to cease for a time; to postpone; to stay, delay, or hinder; to discontinue temporarily, but with an expectation or purpose of resumption." BLACK'S LAW DICTIONARY 1446 (6th ed. 1979). Abatement precludes the trial court and the parties from going forward on a case. *Martinka v. Commonwealth Land Title Ins. Co.,* 836 S.W.2d 773, 777 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (title insurer was judicially prevented from defending title during abatement period); *Lumbermens Mut. Cas. Co. v. Garza,* 777 S.W.2d 198, 199 (Tex.App.—Corpus Christi 1989, orig. proceeding) (discovery requests filed during the period of abatement were a legal nullity). The rationale for the sixty-day abatement is to allow the defendant the sixty-day period free of litigation provided by the statute's notice provision. *Permanente,* 917 S.W.2d at 517 n. 2 (construing the similar notice provision in the Medical Liability and Improvement Act).

■■■ Our review of the trial court's decision is strictly limited to determining whether the court abused its discretion in granting the motion for class certification. *Morgan v. Deere Credit, Inc.,* 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Wiggins v. Enserch Exploration, Inc.,* 743 S.W.2d 332, 334 (Tex.App.—Dallas 1984, writ dism'd w.o.j.). A trial court does not abuse its discretion if it bases its decision on conflicting evidence. *RSR Corp. v. Hayes,* 673 S.W.2d 928, 930 (Tex.App.—Dallas 1984, writ dism'd). A trial court *does* abuse its discretion, however, when it does not properly apply the law to the undisputed facts. *Wiggins,* 743 S.W.2d at 335. Interpretation of a statute is a pure question of law over which the judge has no discretion. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (a clear failure by the trial court to analyze or apply the law constitutes an abuse of discretion).

AOL argues that the trial court abused its discretion by failing to follow the express provisions of the DTPA for a mandatory abatement period. As a prerequisite to filing suit, a consumer must give at least sixty days written notice to the defendant advising it in reasonable detail of the consumer's *specific* complaint and the amount of damages. TEX. BUS. & COM.CODE ANN. § 17.505(a) (Vernon Supp.1997). In 1995, the Texas Legislature amended the DTPA to require automatic abatement of a DTPA claim for sixty days if the plaintiff fails to give the requisite notice before filing suit. The act provides:

(d) The court shall abate the suit if the court, after a hearing, finds that the person is entitled to an abatement because notice was not provided as required by this section. A suit is *automatically abated without the order of the court* beginning on the 11th day after the date a plea in abatement is filed under [this act] if the plea in abatement:

(1) is verified and alleges that the person against whom the suit is pending did not receive the written notice as required by [this act]; and

(2) is not controverted by an affidavit filed by the consumer before the 11th day after the date on which the plea in abatement is filed.

(e) An abatement under Subsection (d) continues until the 60th day after the date that written notice is served in compliance with Subsection (a).

TEX. BUS. & COM.CODE ANN. § 17.505(d), (e) (Vernon Supp.1997) (emphasis added).

It is undisputed that appellees gave no pre-suit notice. AOL argues that the affidavit filed by appellees' attorney fails to controvert its verified plea in abatement because it does not assert that notice was given or that notice was excused by a valid exception. Therefore, AOL asserts that abatement automatically began on March 23, 1997 without the necessity of a court order. The trial court reasoned instead that abatement to permit notice before class certification made "no sense." The court certified the class, and *then* ordered abatement until sixty days after notice on behalf of the entire class was given.

█ Where the language of a statute is unambiguous, courts must seek the intention of the legislature as found in the plain meaning of the words used. *Memorial Hospital—The Woodlands v. McCown*, 927 S.W.2d 1, 4 (Tex.1996). This language in section 17.505(d) of the DTPA is clear; abatement is automatic and mandatory when a verified plea in abatement is filed and lack of pre-suit notice is not controverted.

The DTPA notice provision is less clear than the automatic abatement provision because it does not address how notice is to be given in class actions. In relevant part, section 17.505(a) provides:

As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

TEX. BUS. & COM.CODE ANN. § 17.505(a) (Vernon Supp.1997).

AOL contends the trial court should have abated the action for the named plaintiffs to give notice as provided in section 17.505(a). It is AOL's position that only if it was unable to resolve the claims of the named plaintiffs during the abatement period should the court have considered the motion to certify the class.

Appellees respond first that the trial court was required to certify the class before abatement. Rule 42(c)(1) directs the trial court to determine whether an action is to be maintained as a class action "as soon as practicable." TEX.R. CIV. P. 42(c)(1). This rule has been interpreted liberally, and includes consideration of "all the relevant circumstances." *Franklin v. Donoho*, 774 S.W.2d 308, 314 (Tex.App.—Austin 1989, no writ). The delay in seeking certification is a factor in determining the adequacy of the representation of the class. *See* TEX.R. CIV. P. 42(a). For example, in *Angeles/Quinoco Sec. Corp. v. Collison*, 841 S.W.2d 511, 514 (Tex.App.—Houston [14th Dist.] 1992, no writ), this court held that a five-year delay in requesting a class certification hearing was not in itself enough to show inadequate representation on the part of the plaintiffs' counsel. In *Franklin*, the court found that representation was adequate even though the class was not certified for three years after suit was filed, and the case had been dismissed once for want of prosecution and later reinstated. 774 S.W.2d at 315–16. No cases have held that certification must be determined within 60 days. Appellees' case authority construing "as soon as practicable" in the context of notice of an insurance claim is inapposite. *See Allen v. Western Alliance Ins. Co.* 162 Tex. 572, 349 S.W.2d 590, 593 (1961); *Klein v. Century Lloyds*, 154 Tex. 160, 275 S.W.2d 95, 97 (1955). We conclude the trial court was not required to certify a class before abating for notice.

█ Appellees also assert that the class must be certified for any notice to be meaningful. Before class certification, suits brought as class actions are governed by the rules of procedure applicable to general lawsuits. Thus, until a class is certified, an action is treated as if it were brought by the plaintiffs suing on their own behalf. *See Palais Royal, Inc. v. Partida*, 916 S.W.2d 650, 653 (Tex.App.—Corpus Christi 1996, orig. proceeding) (even though the judge's wife was a customer of the credit card corpo-

ration and would be part of the class, there were no grounds for disqualification before certification). In *Palais Royal*, the named representative made a DTPA demand of her specific damages and also asserted a claim on behalf of "all members of the putative class asserted in this cause." *Id.* at 652. The defendant replied with an offer to settle for the named party's demand and attempted to enforce a Rule 11 agreement to settle the entire case. *Id.* Appellees refer to *Palais Royal* as support for their argument that notice before certification is "fraught with peril." The *Palais Royal* court did not reach the issue of the effect of a settlement offer after pre-suit notice in a consumer class action, however, because there was no signed order in the record. *Id.*

■ In considering the notice issue, it is instructive to review the history of class actions and the DTPA. Consideration of former statutory provisions is appropriate when we construe the current enactment.[3] As originally enacted in 1973, the DTPA specifically permitted class actions in DTPA suits for violations of section 17.46 and certain other specified actions. *See* Act of May 21, 1973, 63rd Leg., R.S., ch. 143, 1973 Tex. Gen. Laws 322, 327 (former § 17.51). Apparently, these provisions were intended to afford a remedy for small claimants who were unable to use the general class action rule as originally enacted. *See* Andrew Gordon Gass, *The Texas Consumer Class Action*, 16 S. Tex. L.J. 111 (1974). The Act also outlined the procedures to be followed in DTPA class actions. *See* Act of May 21, 1973, 63rd Leg., R.S., ch. 143, 1973 Tex. Gen. Laws 322, 328 (former § 17.52). These procedures were patterned after the federal class action rule and the Act specifically directed courts to follow federal decisions in construing section 17.52. *Id.*

The Act also discussed the requirement for preliminary notice of the DTPA claim. The Act required that *"the consumer* must notify the intended defendant of *his* complaint and make demand that the defendant provide relief to the consumer *and others similarly situated." See id.* at 330 (former § 17.53(a)) (emphasis added). The Act further provided that no damages would be awarded *to a consumer class* if a defendant made an offer of settlement in accordance with the Act's requirements. Specifically, the defendant was required to notify all similarly situated consumers who could be reasonably identified that *"upon their request* the intended defendant will provide relief to the consumer and all others similarly situated" and to provide an explanation of the relief being afforded. *See id.* (former § 17.53(d)(2)) (emphasis added).

When the Act was amended in 1977 the provisions dealing with consumer classes were deleted. *See* Act eff. May 23, 1977, 65th Leg., R.S., ch. 216, §§ 10–13, 1977 Tex. Gen. Laws 605. Apparently, the legislative history of the amendments makes no mention of the intent behind these deletions. *See* Gaddy Wells, *What Hath the Legislature Wrought? A Critique of the Deceptive Trade Practices Act as Amended in 1977*, 29 Baylor L.Rev. 525, 539 (1977). There are two possible reasons for deleting the consumer class provisions. The legislature may have intended to deny consumers the right to bring class action suits for violations of the Act. *See id.* On the other hand, the legislature may have anticipated the amendments to Rule 42 governing class actions that were also made in 1977. These amendments adopted most of the changes to the federal class action rule that had been incorporated in the original DTPA. Therefore, the Act's provisions for consumer class action suits may have been eliminated as superfluous. *See id.* This second interpretation is more widely accepted. *See Mahoney v. Cupp*, 638 S.W.2d 257, 261 (Tex.App.—Waco 1982, no

---

**3.** The Code Construction Act provides in relevant part as follows:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:
 (1) object sought to be attained;
 (2) circumstances under which the statute was enacted;
 (3) legislative history;
 (4) common law or former statutory provisions, including laws on the same or similar subjects;
 (5) consequences of a particular construction;
 (6) administrative construction of the statute; and
 (7) title (caption), preamble, and emergency provisions.
Tex. Gov't Code Ann. § 311.023 (Vernon 1988).

writ) ("We believe the more logical reason for the Legislature's action was that the special class action provisions of the DTPA were rendered unnecessary by the Supreme Court's approval of the present Rule 42 on May 9, 1977, and were repealed to avoid any interference with the application of the Rule."). *See also* Jack Pope and Steve McConnico, *Texas Civil Procedure Rule Making*, 30 BAYLOR L.REV. 5, 15 (1978) ("To avoid interfering in this area [of the Supreme Court's revision of the class action rule], the Texas Legislature then repealed the sections of the Texas Business & Commere Code which had authorized class actions in the limited area of deceptive trade practices."); William V. Dorsaneo, III, *Creditors' Rights*, 32 S.W. L.J. 245, 268 (1978) ("The general provisions of the rule [Rule 42, as amended] rendered the special class action provision of the DTPA unnecessary.").

We likewise find that the more logical reason for deletion of the class action provisions in the DTPA was to avoid duplication of Rule 42. Accordingly, we determine notice and settlement offers in DTPA class actions should proceed as envisioned by the legislature.

 After the trial court certified the class, appellees made a DTPA demand.[4] However, this demand was made "on behalf of all the many thousands of Texas who are members of the Class." In relevant part, the demand stated:

> The specific complaints are those alleged, and found by the Attorneys General, in the AVC. Those complaints found by the Attorneys General, and included in the AVC are incorporated herein by reference as if set out verbatim.
>
> The damages include lost subscription fees, cost of obtaining alternate methods of accessing the Web, overbilling, and the concurrent frustration and loss of time resulting from the inability to access AOL as promised.
>
> Under the terms of the AVC, the Attorney Generals [sic] agreed with AOL on

terms of settling allegations made by the Attorney Generals [sic] against AOL for the months of December and January (although such AVC does *not* affect the rights of the Class to bring or maintain this suit to collect *additional* damages). We now adopt that schedule of damages as our initial DTPA demand for the months of December, January, February, March and April. To the extent connection problems continue, we also make demand for payments of equal amounts for each successive month. In addition, we request reasonable and necessary attorney's fees of $100,000 incurred to-date, as allowed by the DTPA. AOL is invited to make an offer of settlement, under the terms of the DTPA (as well as the AVC) as required by Tex. Bus. & Comm.Code Ann. sec. 17.505 and the AVC.

 The AVC provides that AOL shall offer to those who file a complaint the option to receive either a refund or a credit according to a detailed schedule based on each subscriber's type of plan and amount of service used. Thus, without reference to these matters, appellees' demand letter does not make a specific demand on behalf of the named plaintiffs. Consequently, we reject appellees' argument that the notice issue is moot because appellees have now tendered notice on behalf of the class. "A cause becomes moot when the appellate court's judgment cannot have any practical legal effect upon a then existing controversy." *South Padre Dev. Co. v. Texas Commerce Bank N.A.*, 538 S.W.2d 475, 479 (Tex.Civ.App.—Corpus Christi 1976, no writ). Notice of the specific complaints of the named plaintiffs has not been given and is still required under the DTPA.

This specific, individual notice has a further important function as part of the legislative goal of encouraging settlement. Under the 1995 amendments to the DTPA, a defendant can cap its liability for both damages and attorney's fees if its offer is substantially the same as the damages found by the trier

---

4. AOL's response to this demand is not in our record. We do not consider exhibits or appendices to briefs or motions that are not part of the appellate record. *Sewell v. Adams*, 854 S.W.2d 257, 259 n. 1 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Mitchison v. Houston I.S.D.*, 803 S.W.2d 769, 771 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

of fact. TEX. BUS. & COM.CODE ANN. § 17.5052(g) (Vernon Supp.1997). In addition, when the defendant tenders to the consumer the amount of damages and expenses claimed in the consumer's notice, it is a defense to the cause of action. TEX. BUS. & COM.CODE ANN. § 17.506(d) (Vernon Supp. 1997). The class notice tendered in this case is not the same as a notice on behalf of individual named consumers and does not afford AOL the defensive protections contained in these sections of the DTPA. The DTPA notice in class actions should contain the specific allegations and demand by the named plaintiffs and include a demand that the defendant settle with others similarly situated. The defendant is not then entitled to be relieved of liability unless it not only offers to settle with the named plaintiffs, but also with others similarly situated. Because AOL is entitled to this specific notice, which has not yet been provided, the issue presented here is not moot.

 We are not persuaded by appellees' other arguments supporting the trial court's refusal to enforce the mandatory abatement. Appellees argue AOL's complaint is waived. First, appellees contend AOL failed to follow the local rules regarding obtaining a hearing on contested motions. AOL was not required to have a hearing on its plea in abatement. The DTPA requires a hearing on the plea in abatement only if the automatic abatement does not apply. After appellees filed their response to the plea in abatement, AOL notified the court that because appellees failed to controvert lack of notice, the action would automatically abate on March 23, 1997. AOL therefore did not request a hearing. However, the trial court ordered that there would be a hearing on all pending matters on April 3, 1997. At that hearing, the trial court set the schedule of the hearings: first, AOL's motion to dismiss; second, class certification; and then the plea in abatement. Appellees further contend AOL

waived its complaint by failing to object to the court's consideration of the certification issue before the plea in abatement and by first arguing its motion to dismiss instead of demanding abatement.

 There is no "due order" of pleading or proceedings for a plea in abatement as there is for a special appearance.[5] AOL's objection to the certification during abatement, both before and during the hearing, is sufficient to preserve error for our review. Appellees' cited cases that AOL's failure to obtain a ruling on its plea in abatement results in a waiver are either not DTPA suits or pre-date the 1995 amendment making abatement automatic without the necessity of an order. See, e.g., Hines, 843 S.W.2d at 469 (failure to request abatement in pre-amendment DTPA suit); Franklin v. Donoho, 774 S.W.2d 308, 314–15 (Tex.App.—Austin 1989, no writ) (failure to obtain ruling on plea in abatement on immunity before certifying a class).

Finally, appellees argue AOL waived its rights by failing to file a mandamus when the court declined to abate. See Hines, 843 S.W.2d at 469 (mandamus is an appropriate remedy when a court fails to abate). Here, AOL's interlocutory appeal of the certification order is expressly authorized by statute, and mandamus may not have been available. See Walker, 827 S.W.2d at 840 ("The requirement that persons seeking mandamus relief establish the lack of an adequate appellate remedy is a 'fundamental tenet' of mandamus practice.").

 There is no merit to appellees' argument that abatement is not required because they seek relief under other provisions of the DTPA in addition to section 17.50(b)(1). First, these additional claims were not added until the abatement period should have begun, and pleadings filed during that period are ineffective. See Lumbermens Mut. Cas., 777 S.W.2d at 199. In

5. Rule 84 provides that a defendant may plead several matters pertinent to the cause and "such matters shall be heard in such order as may be directed by the court, special appearance and motion to transfer venue, and the practice thereunder being excepted herefrom." See historical comment to TEX.R. CIV. P. 84. "The requirement that defensive matters must be filed at the same time and in due order of pleading was eliminated, and the provisions of the last clause were changed to allow pleas to be heard in such order as the court may direct, excepting a plea of privilege." Amended eff. March 1, 1950 by order of Oct. 12, 1949 (2 Tex. B.J. 529 [1949]).

addition, the defendant is not deprived of the right to notice merely because other relief is sought in addition to a claim for money damages.

■ There likewise is no merit to appellees' contention that abatement is unnecessary because AOL entered into an AVC. *See* Tex. Bus. & Com.Code Ann. § 17.58(a) (Vernon 1987) (providing that "the consumer protection division may accept assurance of voluntary compliance with respect to any act or practice" in violation of the DTPA). Section 17.58 expressly states that "[a]ssurances of voluntary compliance shall in no way affect individual rights of action" under the DTPA. *Id.* at § 17.58(d). Appellees are apparently attempting to argue that the purpose of presuit notice has been fulfilled. The AVC was not a settlement offer made in response to appellees' demand, however. The AVC does not constitute a substitute for notice.

■ We also reject appellees' contention that the notice and abatement procedures do not apply because notice is rendered impracticable by the running of the statute of limitations. Limitations was not close to expiring when appellees filed suit. Suit was filed January 24, 1997, complaining of AOL's actions in advertising its new pricing plans in the fall of 1996. The limitations period for DTPA actions is two years as set forth in section 17.565. Tex. Bus. & Com. Code Ann. § 17.565 (Vernon 1987). The AVC, which was not signed until after this suit was filed, required consumers to accept or reject its terms by June 1997, and appellees are attempting to equate this deadline with a statute of limitations. We find no support for construing an agreement as a statute. Merely because the DTPA recognizes that the consumer protection division may accept assurances of voluntary compliance does not mean that the deadline specified in the AVC is a statute of limitations. *See* Tex. Bus. & Com.Code Ann. § 17.58 (Vernon 1987). Appellees' authority holds that a *statute* fixing a time limit for filing an action is considered a limitations statute shortening the time for filing suit. *See State of California v. Copus,* 158 Tex. 196, 309 S.W.2d 227, 231 (1958). The DTPA does not exempt a plaintiff from a notice requirement because

of a deadline for accepting a previously negotiated settlement offer.

AOL sufficiently complied with the requirements of the DTPA to be entitled to automatic abatement. It filed its plea within the time specified by the statute. *See* Tex. Bus. & Com.Code Ann. § 17.505(c) (Vernon Supp.1997) (plea in abatement may be filed not later than the 30th day after an original answer is filed). The plea was verified. *Cf. K.C. Roofing Co., Inc. v. Abundis,* 940 S.W.2d 375, 378 (Tex.App.—San Antonio 1997, writ denied) (automatic abatement provisions in section 17.505(d) were not triggered by plea in abatement contained in unverified answer). Appellees' affidavit did not controvert lack of notice or otherwise provide a statutory exception. Thus, the automatic trigger was effected and no hearing was required.

Appellees argue that even if abatement were required, it was permissible for the trial court to certify a class during the abatement period. We are not persuaded by appellees' reference to *DeCheca v. Diagnostic Center Hosp., Inc.,* 852 S.W.2d 935 (Tex.1993). In *DeCheca,* the Texas Supreme Court considered the similar abatement procedure for failure to serve notice to a health care provider as required under the Texas Medical Liability and Insurance Improvement Act. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 4.01(a) (Vernon Supp.1997). The court noted that "[d]uring any abatement period, and within the limitations period, the plaintiff remains free to join additional defendants." 852 S.W.2d at 938 n. 5. Appellees argue, therefore, that it was permissible in this case to "join" other plaintiffs through class certification. There is a significant difference, however, between adding other defendants while a suit is abated as to one defendant and adding thousands of plaintiffs who have claims against a defendant against whom the suit is abated.

Accordingly, we hold that the trial court abused its discretion in certifying a class action during the abatement period. Because we sustain AOL's first point of error, we need not reach the remaining points. We reverse the trial court's certification order and order the cause abated for sixty days

after notice from the originally named plaintiffs in accordance with this opinion.